# SUPREME COURT OF THE UNITED STATES

### AMERICAN FREEDOM DEFENSE INITIATIVE, ET AL. *v.* KING COUNTY, WASHINGTON

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 15–584    Decided March 7, 2016

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE ALITO joins, dissenting from the denial of certiorari.

The First Amendment prohibits the government from "abridging the freedom of speech." But the Court has struggled with how that guarantee applies when private speech occurs on government property. We have afforded private speech different levels of protection depending on the forum in which it occurs. See *Pleasant Grove City* v. *Summum*, 555 U. S. 460, 469–470 (2009). In a "traditional public forum"—namely, public streets or parks—speech restrictions must be "narrowly tailored to serve a compelling government interest." *Id.,* at 469. That same standard governs speech restrictions within a "'designated public forum,'" which exists "if government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Ibid.* But if the government creates a limited public forum (also called a nonpublic forum)—namely, "a forum that is limited to use by certain groups or dedicated solely to the discussion of certain subjects"—then speech restrictions need only be "reasonable and viewpoint neutral." *Id.,* at 470.

Distinguishing between designated and limited public forums has proved difficult. We have said that whether the government created a designated public forum depends on its intent—as evidenced by its "policy and practice" and "the nature of the [government] property and its compatibility with expressive activity." *Cornelius* v. *NAACP Legal Defense & Ed. Fund, Inc.*, 473 U. S. 788,

802 (1985). But what this guidance means has bedeviled federal courts.

This case involves a type of forum that has prompted especially stark divisions among federal courts of appeals: advertising in public transit spaces. A plurality of this Court has concluded that a public transit authority that categorically prohibits advertising involving political speech does not create a designated public forum. *Lehman* v. *Shaker Heights*, 418 U. S. 298, 300–302 (1974). But many transit authorities have instead opened their advertising spaces to a wide array of political speech, and courts of appeals are divided on what type of forum this creates. Transit authorities in Chicago, Detroit, New York City, and Washington, D. C., are bound by rulings that classify their ad spaces as designated public forums and, thus, prohibit content-based restrictions on advertising. Transit authorities in Boston—and, in this case, Seattle—are similarly open to political speech, yet can freely restrict speech based on its content. Whether public transit advertising spaces are designated or limited public forums determines what speech millions of Americans will—or will not—encounter during their commutes.

This case offers an ideal opportunity to bring clarity to an important area of First Amendment law. In the decision below, the U. S. Court of Appeals for the Ninth Circuit held that Seattle public transit advertising space is a limited public forum. The court then allowed the transit authority to exclude ads submitted by the American Freedom Defense Initiative (AFDI)—petitioner here—by applying content-based advertising restrictions. I would have granted certiorari.

I

King County, Washington, operates a public transit system that provides transportation to hundreds of thousands of riders in and around Seattle. Like many transit

authorities, King County's transit system funds itself in part by selling advertising space on its buses and other property. And, like many transit authorities, King County subjects proposed ads to a preapproval process. Its policy for evaluating ads prohibits political campaign advertising, but allows other political messages. Political messages, however, cannot be displayed if the county deems them "false or misleading," "demeaning and disparaging," or a risk to the orderly operation of the transit system. 2014 WL 345245, *4 (WD Wash., Jan. 30, 2014).

King County has approved many controversial political ads. Transit bus exteriors have proclaimed "Save Gaza! Justice for all." Riders have encountered ads urging women to visit a pro-life crisis pregnancy center to discuss abortion alternatives. Ads have championed "Equal Rights for Palestinians[:] The Way to Peace," and announced, "The Palestinian Authority Is Calling For A Jew-Free State[:] Equal Rights for Jews." King County even initially accepted an ad that would have emblazoned "Israeli War Crimes[,] Your Tax Dollars At Work" on buses—before withdrawing that acceptance based on threats of violence. See *Seattle Mideast Awareness Campaign* v. *King County*, 781 F. 3d 489, 494 (CA9 2015) (*SeaMAC*).

In 2013, the State Department and the Federal Bureau of Investigation (FBI) launched a campaign to encourage anyone in Seattle—an international travel hub—to report information about wanted terrorists. To that end, the State Department submitted ads for King County's approval to run on bus exteriors.

Consistent with a campaign aimed at soliciting information about wanted terrorists, one ad displayed the names and faces of 16 wanted terrorists beneath the words "Faces of Global Terrorism." Appendix, *infra*. The bottom of this ad announced: "Stop a Terrorist. Save Lives. Up to $25 Million Reward." *Ibid.* The ad included

contact information for the Rewards for Justice Program, which offers substantial monetary rewards for information helping to locate wanted terrorists. See *ibid.* King County's Transit Advertising Program Project Manager interpreted the ad as a conventional "'wanted poster'" and approved it. Record in No. 2:13–CV–01804 (WD Wash.) (Record), Doc. 14, pp. 4–5 (Shinbo decl.). The ad started appearing on buses in June 2013. *Ibid.*

King County then received a "small" number of complaints. *Id.,* at 6. Faultfinders complained that juxtaposing the words "Faces of Global Terrorism" next to "pictures of persons of color with Muslim-sounding names . . . suggested that all similar persons were dangerous terrorists," and that "just to depict men of certain races is . . . incendiary itself." *Ibid.* (internal quotation marks omitted). A Seattle-area U. S. Congressman echoed these objections. The State Department voluntarily withdrew the ad.

Weeks later, petitioner AFDI—an advocacy group that seeks to convey its views on terrorism by buying public transit ad space—submitted a proposed ad. See Appendix, *infra.* Like the State Department ad, AFDI's ad was captioned "Faces of Global Terrorism." *Ibid.* And like the State Department ad, AFDI's ad displayed the same 16 photos of wanted terrorists, with their names beneath. At the bottom of the ad, AFDI included slightly different text. Whereas the State Department ad concluded "Stop a Terrorist. Save Lives. Up to $25 Million Reward," AFDI's ad concluded: "AFDI Wants You to Stop a Terrorist. The FBI Is Offering Up To $25 Million Reward If You Help Capture One Of These Jihadis." *Ibid.*

King County rejected AFDI's ad as inconsistent with its policy. First, King County deemed the ad "false or misleading," because the Government was not offering a $25 million reward for any depicted terrorist, and because the State Department, not the FBI, offers the rewards. Record, Doc. 13, pp. 7–8 (Desmond decl.). Second, King

County considered the ad "demeaning and disparaging" to minorities "by equating their dress and skin color with terrorists" and by misusing the term "jihadi." *Id.,* at 8. Third, King County believed that the ad could "interfere with operation of the Metro transit system" because the ad could alienate riders and discomfort staff. *Id.,* at 9.

AFDI sued, but the District Court rejected AFDI's First Amendment challenge. It reasoned that the transit system's advertising space was a limited public forum, and that King County's restrictions were reasonable and viewpoint neutral. 2014 WL 345245, at *4–*7. The Ninth Circuit affirmed. It agreed that King County's transit ad space was a limited public forum, and considered the rejection of AFDI's ad as "false or misleading" to be reasonable and viewpoint neutral. 796 F. 3d 1165, 1168–1172 (2015). It did not reach King County's other rationales. *Ibid.*

## II

In the large portions of this country encompassed by the Second, Sixth, Seventh, and D. C. Circuits, AFDI's ad would likely have met a different fate. In those Circuits, accepting a wide array of political and issue-related ads demonstrates that the government intended to create a designated (rather than limited) public forum because "political advertisements . . . [are] the hallmark of a public forum." *AFDI* v. *Suburban Mobility Auth. for Regional Transp.,* 698 F. 3d 885, 890 (CA6 2012).* In those Cir-

————————

*Accord, *New York Magazine* v. *Metropolitan Transp. Auth.,* 136 F. 3d 123, 130 (CA2 1998) ("[T]he advertising space on the outside of [transit] buses is a designated public forum, because the [authority] accepts both political and commercial advertising"); *Lebron* v. *Washington Metropolitan Area Transit Auth.,* 749 F. 2d 893, 896, and n. 6 (CADC 1984) ("[T]he Authority here, by accepting political advertising, has made its subway stations into public fora"); *Air Line Pilots Assn. Int'l* v. *Department of Aviation of Chicago,* 45 F. 3d 1144, 1152–1154, and n. 7 (CA7 1995) (focusing on "whether or to what extent 'political'

cuits, transit authorities that open their ad spaces to political messages must provide compelling justifications for restricting ads, and must narrowly tailor any restrictions to those justifications.

In the First and Ninth Circuits, however, transit authorities have far more leeway to restrict speech. There, "a transit agency's decision to allow the display of controversial advertising does not in and of itself establish a designated public forum." *AFDI* v. *Massachusetts Bay Transp. Auth.*, 781 F. 3d 571, 580 (CA1 2015); see *Sea-MAC*, 781 F. 3d, at 498–499 (similar); see also 796 F. 3d, at 1168 (decision below, relying on *SeaMAC*). As the Ninth Circuit acknowledged, this approach conflicts with the approaches of "other courts [that] have held that similar transit advertising programs constitute designated public forums." *SeaMAC, supra*, at 498–499. Materially similar public transit advertising programs should not face such different First Amendment constraints based on geographical happenstance.

This case would allow us to resolve that division. King County's advertising restrictions cannot pass muster if the transit advertising space is a designated public forum. King County bans ads that it deems "false or misleading," but this Court considers broad, content-based restrictions on false statements in political messages to be generally impermissible. See *United States* v. *Alvarez*, 567 U. S. ___, ___–___ (2012) (plurality opinion) (slip op., at 5–6); see *id.*, at ___–___ (BREYER, J., concurring in judgment) (slip op., at 8–10). King County's prohibitions on "demeaning and disparaging" ads, or ads that could disrupt the transit system by alienating riders, are also problematic content-based restrictions. King County may wish to protect

—————

advertisements have been permitted in the past"); *Planned Parenthood Assn./Chicago Area* v. *Chicago Transit Auth.*, 767 F. 2d 1225, 1232 (CA7 1985) (similar).

captive riders' sensibilities, but "'we are often "captives" outside the sanctuary of the home and subject to objectionable speech.'" *Cohen* v. *California*, 403 U. S. 15, 21 (1971). The government cannot automatically "shut off discourse solely to protect others from hearing it." *Ibid.*

To be sure, this case involves speech that some may consider offensive, on a politically charged subject. That is all the more reason to grant review. "[A] principal function of free speech . . . is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Texas* v. *Johnson*, 491 U. S. 397, 408–409 (1989) (internal quotation marks omitted).

Many of the Court's landmark First Amendment decisions have involved contentious speech in times of national turmoil. When some States branded the civil rights movement a threat to public order, the Court decided whether protesters against segregation could be punished for purportedly disrupting the peace. *E.g., Cox* v. *Louisiana*, 379 U. S. 536, 537–538 (1965). When the Nation was divided over the Vietnam War, the Court decided whether the First Amendment prohibits the Government from prosecuting a man for wearing a "'"F— the Draft"'" jacket in a courthouse, *Cohen, supra,* at 16, and whether a public school could punish students who wear black armbands as symbols of antiwar protest, *Tinker* v. *Des Moines Independent Community School Dist.*, 393 U. S. 503, 504 (1969). More recently, we have decided whether protesters can brandish signs proclaiming "'God Hates Fags'" and "'God Hates the USA/Thank God for 9/11'" outside a soldier's funeral, *Snyder* v. *Phelps*, 562 U. S. 443, 447–448 (2011); whether the First Amendment protects videos that depict women crushing small animals to death to satisfy viewers' sexual fetishes, *United States* v. *Stevens*, 559 U. S. 460, 464–466 (2010); and whether States can reject Confederate-flag license plates, *Walker* v. *Texas Div., Sons*

*of Confederate Veterans, Inc.*, 576 U. S. ___, ___ (2015) (slip op., at 1).

I see no sound reason to shy away from this First Amendment case. It raises an important constitutional question on which there is an acknowledged and well-developed division among the Courts of Appeals. One of this Court's most basic functions is to resolve this kind of question. I respectfully dissent from the denial of certiorari.

Appendix to THOMAS, J., dissenting

# APPENDIX



The top image is the State Department's "Faces of Global Terrorism" advertisement, which King County approved and allowed to run on its buses. The bottom image is AFDI's "Faces of Global Terrorism" advertisement, which King County rejected.